## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                                          )
PATRICIA A. BELL,                         )
                                          )
                    Plaintiff,            )
                                          )
        v.                                )        Civil Action No. 12-0664 (ABJ)
                                          )
ELITE BUILDERS and HVAC INC.,             )
et al.,                                   )
                                          )
                    Defendants.           )
_____)
```

## <u>MEMORANDUM OPINION</u>

Plaintiff Patricia A. Bell has filed a series of related and overlapping complaints, in multiple courts, all arising out of the renovation of her home in 2009.  In what began as a simple negligence action, she is now suing her contractor, Elite Builders and HVAC, Inc., and several of its employees, agents, and officers, for negligence, breach of fiduciary duty, fraud, constructive/equitable trust, breach of an implied duty of good workmanship, breach of contract, and improper licensure.  Defendants' dispositive motion on the single claim that comprised the original complaint is currently before the Court.

Plaintiff alleges that when the workers in her house covered the kitchen floor with a drop cloth, they negligently created a "dangerous and defective condition" that caused her to slip and fall and sustain "severe, painful, and permanent injuries."  Compl. [Dkt. # 1] ¶¶ 10–11.  Defendants have moved for summary judgment on the personal injury claim, asserting the defenses of contributory negligence and assumption of the risk.  After considering the parties' pleadings, the Court finds that plaintiff is barred from recovering for negligence as a matter of

law because she assumed the risk.   Therefore, the Court will grant defendants' motion for summary judgment on that count.

## BACKGROUND

In December of 2008, plaintiff Patricia A. Bell hired defendants to complete renovations of both the exterior and interior of her home, including the kitchen.   Compl. ¶ 3.[1]   Defendants commenced work in February of 2009, and plaintiff elected to remain in the house during the construction.   Compl. ¶ 4; Pl.'s Dep., Ex. 1 to Defs.' Mot. for Summ. J. [Dkt. # 21-1] at 18.

On the morning of May 2, 2009 – about two and a half months into the renovation – plaintiff heard a noise in her backyard from her second floor bedroom.   Pl.'s Dep. at 22–23.   To determine the source of the noise, she went down the stairs, turned on the lights, and walked through the kitchen to look out the sliding glass door into her backyard.   Pl.'s Dep. at 23. Plaintiff observed several possums in the backyard and decided to retrieve her camera from the living room to take photographs of them.   *Id.*   She made the trip, returned to the kitchen, and opened the sliding glass door.   *Id.*   She then leaned out the door to photograph the animals while standing on the drop cloth that covered the floor.   *Id.*

Plaintiff states that while she was leaning out of the door, her "left ankle got twisted up in [a] drop cloth, and [she] fell out the back door onto [her] patio."   *Id.* at 24.   She alleges that as a result of this fall she suffered "severe, painful, and permanent injuries."   Compl. ¶ 11.   It is not disputed that defendants had placed the drop cloths in plaintiff's kitchen several days before her fall, and that plaintiff knew they were there.   Pl.'s Dep. at 25–26; *see also* Pl.'s Aff., Ex. to Pl.'s

---

1       Since the allegations regarding the personal injury claim have remained substantially the same throughout plaintiff's proposed amended complaints, the Court will refer to the original complaint in this opinion.   *Compare* Compl. ¶¶ 4–12 *with* Proposed 2d Am. Compl., Ex. to Pl.'s Mot. for Leave to Serve 2d Am. Compl. [Dkt. # 35-1] ¶¶ 19–28.

Supplemental Opp. to Defs.' Mot. for Summ. J. [Dkt. # 39-1] ¶ 14.   These are the facts that underlie the motion before the Court.

The dispute between the plaintiff and her contractor has spawned a succession of legal actions that address not only the drop cloths but the financial relationship between the parties:

- On April 26, 2012, plaintiff filed a personal injury negligence action alleging that defendants "breached the duties they owed to the Plaintiff by causing the dangerous and defective condition to exist upon her premises and failing to remedy such dangerous and defective condition," and that as a "direct and proximate result" of this breach, plaintiff was injured.  Compl. ¶¶ 10–11.

- On November 13, 2012, defendants filed the instant motion for summary judgment, asserting that plaintiff is barred from recovering on her negligence claim as a matter of law because she was contributorily negligent and she assumed the risk.  Defs.' Mot. for Summ. J. ("Defs.' Mot.") [Dkt. # 21] ¶¶ 2–3.  Plaintiff opposed the motion.  Pl.'s Opp. to Defs.' Mot. for Summ. J. ("Pl.'s Opp.") [Dkt. # 22] at 6.

- On January 7, 2013, plaintiff moved to amend her complaint, reasserting the negligence claim and adding claims of breach of fiduciary duty and fraud.  Pl.'s Mot. to Amend Compl. [Dkt. # 29] ¶¶ 29–40.  Defendants opposed this motion.  Defs.' Opp. to Pl.'s Mot. to Amend Compl. [Dkt. # 30].

- On February 13, 2013, plaintiff filed a complaint in the Superior Court of the District of Columbia based upon the same set of facts and against almost identical defendants, alleging negligence, breach of fiduciary duty, fraud, constructive/equitable trust, breach of an implied duty of good workmanship, breach of contract, and improper licensure.  *Bell v. Elite Builders & HVAC, Inc.*, Civil Action No. 1271-13 (D.C. Super. Ct. filed Feb. 13, 2013), Ex. 1 to Defs.' Opp. to Pl.'s Mot. for Leave to Serve 2d Am. Compl. [Dkt. # 36-1].

- On March 12, 2013, plaintiff again moved to amend her complaint in this Court to assert two additional claims:  constructive/equitable trust and a breach of an implied warranty of good workmanship.  Proposed 2d Am. Compl. ¶¶ 41–47.  Defendants also opposed this motion.  Defs.' Opp. to Pl.'s Mot. to Serve 2d Am. Compl. [Dkt. # 36].

- On March 14, 2013, one of the defendants filed a motion to dismiss or, in the alternative, for summary judgment in D.C. Superior Court.  Prelim. Mot. to Dismiss or, in the alternative, for Summ. J., *Bell v. Elite Builders & HVAC, Inc.*, Civil Action No. 1271-13 (D.C. Super. Ct.).

- On April 30, 2013, plaintiff filed another action in this Court that mirrors the seven count complaint filed Superior Court.  *Bell v. Elite Builders & HVAC*, Civil Action No. 13-0604 (D.D.C. filed Apr. 30, 2013).

- On May 13, 2013, the Court: (1) consolidated plaintiff's two cases before this Court – Civil Action No. 12-0664 and Civil Action No. 13-0604; (2) denied plaintiff's two motions for leave to amend the complaint in Civil Action No. 12-0664 as moot in light of the new complaint filed in Civil Action No. 13-0604; and (3) stayed plaintiff's new case, Civil Action No. 13-0604, pending the resolution of the motions filed in the identical Superior Court case.  Order [Dkt. # 37].[2]

On May 1, 2013, the Court indicated that it had the fully briefed summary judgment motion on the negligence count under advisement, and it permitted the parties to submit supplemental briefing on the assumption of risk issue.  *See* Pl.'s Supplemental Opp. to Defs.' Mot. for Summ. J. ("Pl.'s Supplemental Opp.") [Dkt. # 39]; Defs.' Surreply to Pl.'s Supplemental Opp. to Mot. for Summ. J. [Dkt. # 40].  The motion is now before the Court for decision.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (internal quotation marks omitted).  The existence of a factual

---

2       During an initial scheduling conference on May 17, 2013, the Superior Court denied the pending motion to dismiss or, in the alternative, for summary judgment orally and without opinion.  Oral Ruling on Written Motion, *Elite Builders & HVAC, Inc.*, Civil Action No. 1271-13 (D.C. Super. Ct. May 17, 2013).  The court noted that the denial of the defendant's motion for summary judgment was without prejudice.  *Id.*  On May 28, 2013, a number of the other defendants in the Superior Court case also filed motions to dismiss or, in the alternative, for summary judgment.

dispute is insufficient to preclude summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation.  *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## ANALYSIS

In their motion for summary judgment, defendants contend that plaintiff is completely barred from recovering on her negligence claim because she was contributorily negligent and because she assumed the risk.  Defs.' Mot. ¶¶ 2–3.  Since the Court finds that plaintiff's assumption of risk vitiates her negligence claim, the Court will grant summary judgment for the defendants without reaching the contributory negligence issue.

In the District of Columbia, assumption of the risk bars recovery in a negligence action. *White v. United States*, 780 F.2d 97, 108 n.36 (D.C. Cir. 1986); *see also Phillips v. Fujitec America, Inc.*, 3 A.3d 324, 328 (D.C. 2010) ("[A]ssumption of the risk . . . bars recovery where a plaintiff voluntarily encounters a known risk."); *Jarrett v. Woodward Bros.*, 751 A.2d 972, 986 (D.C. 2000), quoting *Sinai v. Polinger Co.*, 498 A.2d 520, 524 (D.C. 1985) (assumption of the risk bars recovery in a negligence case because "the plaintiff has 'consciously relieved the defendant of any duty which he otherwise owed the plaintiff.'").  Assumption of the risk often involves "'voluntary exposure to a reasonable risk,' such as the risk incurred by attendees of spectator sports events." *Phillips*, 3 A.3d at 328, citing *Scoggins v. Jude*, 419 A.2d 999, 1004

(D.C. 1980).   However, courts in the District of Columbia have also applied the defense to plaintiffs who voluntarily encounter an *un*reasonable risk. *Id.* at 329 n.13, citing *Wash. Metro. Area Transit Auth. v. Johnson*, 726 A.2d 172 (D.C. 1999) (en banc).

Regardless of whether the risk involved is alleged to have been reasonable or unreasonable, the elements of the assumption of risk defense are the same:  (1) the plaintiff must have knowledge of the danger; and (2) the plaintiff must voluntarily expose herself to that known danger.  *See Morrison v. MacNamara*, 407 A.2d 555, 566 (D.C. 1979).  The Court finds plaintiff is barred from recovering on her negligence claim because she knew of the danger posed by the drop cloths, and she voluntarily exposed herself to it.

**A.  Plaintiff fully comprehended and appreciated the danger posed by the drop cloths.**

To establish the first element, the court must find that the plaintiff had a "full comprehension and appreciation of the danger"; a showing that the plaintiff was simply aware of the risk is insufficient.  *Id.* at 566–67.  This knowledge requirement involves a fact-sensitive analysis that takes into account a plaintiff's age, intelligence, and experience, and in some cases, it is a question to be decided by the jury.  *See Butler v. Frazee*, 211 U.S. 459, 466 (1908); *see also Morrison*, 407 A.2d at 568.

> But where the conditions are constant and of long standing, and the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the common understanding, and the [individual] is of full age, intelligence, and adequate experience, and all these elements of the problem appear without contradiction, from the plaintiff's own evidence, the question becomes one of law for the decision of the court.

*Butler*, 211 U.S. at 467; *see also Prosser and Keeton on the Law of Torts*, § 55 at 310 (2d ed. 1955) ("[T]here are certain risks which any one of adult age must be taken to appreciate:  the danger of slipping on ice, of falling through unguarded openings . . . [and] where it is clear that any person of normal intelligence in [the plaintiff's] position must have understood the danger,

the issue [of plaintiff's knowledge and appreciation of the danger] must be decided by the court.").

Here, plaintiff had a subjective appreciation of the danger:  the drop cloths had been in her kitchen for several days leading up to her fall, and she appreciated that they could be dangerous because she has characterized them as "tripping hazards."  *See* Pl.'s Dep. at 25–26; Pl.'s Answers to Def.'s Interrogs., Ex. 2 to Defs.' Mot. [Dkt. # 21-1] at No. 6.  In an attempt to avoid this conclusion, plaintiff characterizes herself as an "unlearned and unwary kitchen user." Pl.'s Opp. at 3.  She also alleges that "she was not a safety engineer" and "did not appreciate that she was exposing her[self] to any forseeable risk of injury such as would be apparent to a safety engineer."  Pl.'s Supplemental Opp. at 8.  But whether plaintiff was adept at using a kitchen or whether she was a "safety engineer" is not at issue.  The relevant analysis under *Bulter* is whether she was "of full age, intelligence, and adequate experience" and whether the danger was obvious to common understanding.  *Butler*, 211 U.S. at 467.  At the time of the injury, plaintiff was a person "of full age, intelligence, and adequate experience":  she was fifty-seven years old; she had worked as a legal secretary in a Washington, D.C. law firm for about twelve years; and she had been living in a home under renovation for almost three months.  Defs.' Mot. at 11; *see also* Pl.'s Opp. at 2; Pl.'s Dep., Ex. 1 to Defs.' Opp. to Pl.'s Mot. to Amend Compl. [Dkt. # 30-1] at 88.  Further, like slipping on ice, the danger of slipping or tripping on a cloth on a "polished slippery wood floor," Pl.'s Opp. at 3, is obvious.  Plaintiff did not need to review "the research studies of injury-causing worksite mechanisms," Pl.'s Supplemental Opp. at 8, to apprehend that danger.

The cases that plaintiff cites in her supplemental opposition memorandum to support her argument that she did not have the requisite knowledge are inapposite.  In *Morrison*, the court

stated that in the context of medical malpractice "save for exceptional circumstances, a patient cannot assume the risk of negligent treatment" because of "the superior knowledge of the doctor with his expertise in medical matters and the generally limited ability of the patient to ascertain the existence of certain risks and dangers . . . ."  407 A.2d at 567–68.  The court's statement in *Morrison* does not apply to this context because unlike medical treatment, the danger of slipping on a drop cloth is obvious to common understanding and does not require "superior knowledge."

In *Harris v. Plummer*, the plaintiff was a passenger in an automobile that had collided with another automobile on an icy day.  190 A.2d 98, 99 (D.C. 1963).  No more than five minutes after the first collision – while both cars were stopped – a third car struck plaintiff's car from behind.  *Id.* at 99–100.  The court held that the assumption of the risk defense was not available in that circumstance because there was no evidence that the plaintiff deliberately incurred a known danger simply by sitting in the car while the driver inspected the vehicle for damage after the first collision.  *Id.* at 100.  But here, plaintiff deliberately incurred a known danger:  she saw the drop cloth on the ground, she understood the danger of slipping on it, she decided to traverse the kitchen quickly twice anyway, and she leaned out of the sliding glass door without any sort of firm purchase for her feet.

The case is also distinguishable from cases cited by the plaintiff in which the risks had been hidden from the claimants involved.  In *Butera v. District of Columbia*, a decedent's estate brought a wrongful death action on behalf of an individual who had been beaten to death while serving as an undercover operative for the Metropolitan Police Department.  83 F. Supp. 2d 25, 27 (D.D.C. 1999), *aff'd in part, rev'd in part,* 235 F.3d 637, 641 (D.C. Cir. 2001).  The court denied the defendants' motion for summary judgment on assumption of risk grounds because the officers had withheld critical information from the decedent about the criminal activity in the

neighborhood where he was killed, and without that information, the decedent did not have the requisite knowledge about the risk.  *Id.* at 37–38.  Similarly, in *Weil v. Seltzer*, a patient had been led to believe he had been placed on a regimen of antihistamines, when in fact, the doctor had been prescribing steroids.  873 F.2d 1453, 1456 (D.C. Cir. 1989).  The patient died of the long-term effects of steroid use, and his estate sued the doctor for wrongful death.  *Id.*  The court found that the patient did not knowingly assume the risk of taking steroids because he believed he was taking something else.  *Id.* at 1459.

This case is unlike *Butera* or *Weil* because plaintiff is not asserting that defendants had superior information that they failed to pass along to her.  Rather, plaintiff has acknowledged that she saw the drop cloth on the uncarpeted surface.  As a person "of full age, intelligence, and adequate experience" she must be charged with the knowledge that walking on what she herself describes as "a wrinkled drop cloth lying on a polished slippery wood floor," Pl.'s Opp. at 3, could cause her to slip and fall.

**B.  Plaintiff voluntarily encountered the risk.**

To establish the second element, the court must find that the plaintiff voluntarily encountered the risk.  *Morrison*, 407 A.2d at 566–67.  In this analysis, a court should look to whether the plaintiff's consent to encounter the risk was "given freely and without any element of coercion attributable to the defendant."  *Martin v. George Hyman Constr. Co.*, 395 A.2d 63, 72 (D.C. 1978).  Where a defendant leaves a plaintiff with no reasonable alternative but to encounter the risk, a plaintiff does not voluntarily assume the risk.  *See Dougherty v. Chas. H. Tompkins Co.*, 240 F.2d 34, 36 (D.C. Cir. 1957) (plaintiff who had the option of using an unsafe sidewalk or staying home had not assumed the risk given the city's statutory duty to reasonably maintain sidewalks); *Kanelos v. Kettler*, 406 F.2d 951, 955–56 (D.C. Cir. 1968) (a tenant did not

voluntarily encounter the danger posed by a defective bathroom door sill where the landlord knew about the defect, refused to correct it, and the tenant's only choices were to encounter the defect or forego the use of the bathroom); *see also Morrison*, 407 A.2d at 567 ("A defendant who by his own wrong has compelled the plaintiff to choose between two evils cannot be permitted to say that the plaintiff is barred from recovery because he has made the choice."), citing Restatement (Second) of Torts § 496E (1965).

Here, plaintiff made the conscious decision to walk through the job site in her kitchen not once, but twice. She attempts to characterize her encounter with the drop cloths as involuntary because "any access to her back yard . . . was through a glass door in her kitchen." Pl.'s Opp at 2; *see also* Pl.'s Supplemental Opp. at 7. But plaintiff directly undercuts this assertion when she elaborates: "If a fire broke out *that prevented occupants from access to the front staircase*, the only means of evacuating the home was through the rear glass door in the kitchen." Pl.'s Supplemental Opp. at 7 (emphasis added). In any event, in her deposition, she acknowledged that she could enter the backyard by walking outside around the side of her home. Pl.'s Dep. at 40 (stating that she accessed the front of her home and the public street from her backyard after she fell). This is certainly a reasonable alternative to walking through a kitchen that is under renovation. Therefore, unlike in *Dougherty* and *Kanelos*, plaintiff was not presented with a

coercive choice or choice of evils that negated the voluntariness of the choice.  Further, plaintiff could have moved the drop cloth aside when she returned to the doors to take the photographs.[3]

Plaintiff argues that even if the danger was obvious to her, defendants should still be responsible for her injury because they were in the best position to eliminate it.  Pl.'s Opp. at 10. To support this assertion, she relies on a section of the Second Restatement of Torts and case law that discuss when a landowner owes a duty to protect invitees from dangers that are open and obvious.  Pl.'s Opp. at 7–10.  But this line of cases is not applicable to the situation at hand. First, the doctrine would impose a duty on plaintiff, the homeowner in this case, and not on defendants.  Second, these cases relate to when a landowner owes a duty, not whether the plaintiff assumed the risk and therefore should be barred from recovery.  Thus, they do not alter the Court's conclusion that plaintiff encountered the risk voluntarily.

The remaining cases in plaintiff's supplemental opposition memorandum do not change the outcome here either.  In *Novak v. Capital Mgmt. & Dev. Corp.*, the defendant – a night club owner – argued that the district court should have granted its summary judgment motion on the plaintiff's negligence claim because the plaintiff assumed the risk of injury by knowingly and voluntarily becoming part of an ongoing fight after assailants attacked one of his friends.  570 F.3d 305, 314 (D.C. Cir. 2009).  The D.C. Circuit rejected that argument on the grounds that a reasonable jury could have found that the plaintiff did not voluntarily enter the fight:  the plaintiff was standing close to his friend when the fight began, and he stated that he "became part

---

3       Plaintiff describes the drop cloths as being "laden with heavy building materials."  Pl.'s Supplemental Statement of Disputed Facts Requiring Jury Resolution, Ex. to Pl.'s Supplemental Opp. [Dkt. # 39] ¶ 9.  Plaintiff has submitted a photograph of her kitchen as it allegedly looked the night before she fell.  Ex. 1 to Pl.'s Supplemental Opp. [Dkt. # 39-1].  That picture demonstrates that the part of the drop cloth next to the sliding door did not have buckets on it. *Id.*  Therefore, plaintiff could have pushed the drop cloth away from the sliding door before she leaned out to take her picture. Or, given the obstructions in her kitchen, she could have exited by the front door.

of the melee involuntarily, as it developed around [him]."  *Id.* (alteration in original).  Unlike the

fight in *Novak*, the danger of the slipping on drop cloths did not develop around plaintiff.  She

was aware of the danger and chose to encounter it.

In *Martin*, an ironworker who was injured while working at a construction site brought a

negligence suit against the general contractor in charge of the project on the grounds that the

general contractor breached the statutory duty to provide reasonably safe working conditions

under D.C. Code 1973 § 36-438(a) and breached the specific duty of care imposed by sections

11-21090 and 11-21091(f) of the District of Columbia Safety Standards, Rules and Regulations

Construction.  395 A.2d at 65.  The court held that "a wage earner's claim under the statutory

safety scheme is not barred unless he incurred the injury in willful, wanton, or reckless disregard

for his safety, [and] his determination to encounter a situation of risk cannot be said to be

voluntary unless his determination was, in light of available alternatives, willful, wanton, or

reckless."  *Id.* at 72.  This standard does not apply here because plaintiff has not alleged that

defendants breached a statutory duty owed to her.  *See* Compl. ¶¶ 5–12 (alleging that defendants

owed her a duty to perform the construction work in a "safe, reliable and workmanlike manner"

but never alleging that this duty was imposed by statute); *see also* Proposed 2d Am. Compl. ¶¶

20–28 (failing to allege that the duty that defendants allegedly owed to plaintiff was imposed by

statute).[4]

---

4  In his deposition, plaintiff's expert stated that under 29 C.F.R. § 1926, "construction contractors, prime contractors are responsible for overall administration of safety programs and site safety on a construction site."  Dep. of E. Ross Curtis, Ex. to Pl.'s Supplemental Opp. [Dkt. # 39-1] 44.  This regulation is not designed to protect homeowners; it establishes work and safety conditions for construction workers.  *See* 29 C.F.R. § 1926.1; *see also* 40 U.S.C. § 3704(a)(1).  So it did not impose the statutory duty on defendants necessary to bring them under the *Martin* standard.

Therefore, plaintiff is barred from recovering on her negligence claim because she assumed the risk knowingly and voluntarily, and Court will grant defendants' motion for summary judgment.[5]

## **CONCLUSION**

Accordingly, the Court will grant defendants' motion for summary judgment on plaintiff's personal injury negligence claim.   A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: June 10, 2013

---

5       Plaintiff also attached a "supplemental statement of the disputed facts requiring jury resolution" to her supplemental opposition.  [Dkt. # 39].  Despite the title, the only disputed fact listed is plaintiff's allegation that the sliding door in her kitchen was the only way to access her backyard.  *Id.* ¶¶ 4–5, 18.  No reasonable jury could credit this allegation since plaintiff used an alternative means to access her house from her backyard after her fall.  Pl.'s Dep. at 40.